*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD SCOTT HASLAM,

        Plaintiff-Appellee,

v

JENNIFER ANNE-MARIE HASLAM,

        Defendant-Appellant.

UNPUBLISHED
April 28, 2022

No. 357830
Wayne Circuit Court
Family Division
LC No. 18-110656-DM

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order granting plaintiff sole legal custody of the parties' children, LH and VH, and extending plaintiff's parenting time to the extent of giving him primary physical custody. Defendant argues that the trial court erred by finding the threshold for considering a change of custody satisfied, in its analysis of the statutory best-interest factors, and its final determination of custody and parenting time. We agree that the trial court erred with respect to three best-interest factors, but conclude that the errors were harmless. Finding no other error requiring reversal, we affirm.

When the parties divorced in April 2019, they were awarded joint legal custody, with plaintiff exercising parenting time one weekday overnight and every other weekend. Defendant received the balance of the parenting time, subject to a separate holiday schedule. The instant appeal arises from plaintiff's September 2020 emergency motion for change of custody. Plaintiff described several disputes between the parties that eventually required intervention from their attorneys and alleged that the parties' eldest daughter, LH, had missed or been late to most of the virtual class sessions in her first week of first grade. The trial court entered an ex parte order temporarily granting plaintiff parenting time Monday through Friday and alternating weekends pending a hearing on the motion.

After hearing limited testimony on the subjects raised in plaintiff's motion, the trial court found proper cause and a change of circumstances to reconsider custody and schedule the matter for a full hearing. The evidentiary hearing was held over a number of nonconsecutive days between November 2020 and May 2021, culminating in the trial court's decision to award plaintiff

-1-

sole legal custody. The court also modified the parenting-time schedule to reduce defendant's parenting time to one weekday evening and alternating weekends. This appeal followed.

In matters involving child custody, " 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pennington v Pennington*, 329 Mich App 562, 569-570; 944 NW2d 131 (2019), quoting MCL 722.28. This Court will defer to the trial court's factual findings, including the existence of proper cause or a change of circumstances, unless the evidence "clearly preponderates in the opposite direction." *Pennington*, 329 Mich App at 570; *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009) (quotation marks and citation omitted). Discretionary rulings such as a trial court's decision to change custody are reviewed for an abuse of discretion. *Lieberman v Orr*, 319 Mich App 68, 77; 900 NW2d 130 (2017). "[A]n abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Yachcik v Yachcik*, 319 Mich App 24, 31; 900 NW2d 113 (2017) (quotation marks and citation omitted).

Defendant first argues that the trial court erred by finding that plaintiff established proper cause and a change of circumstances for purposes of reconsidering the existing custody arrangement. We disagree.

"As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman*, 319 Mich App at 81. This Court's opinion in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003), articulates the threshold requirements a party seeking a change of custody must satisfy:

> [T]o establish "proper cause" necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being. When a movant has demonstrated such proper cause, the trial court can then engage in a reevaluation of the statutory best interest factors.
>
> * * *
>
> [I]n order to establish a "change of circumstances," a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed. Again, not just any change will suffice, for over time there will always be some changes in a child's environment, behavior, and well-being. Instead, the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. This too will be a determination made on the basis of

the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors. [*Id*. at 512-514.[1]]

Defendant mischaracterizes the record by arguing that the trial court found proper cause and a change of circumstances solely on the basis of LH's absences from virtual classes at the beginning of the school year. While the schooling issue was certainly a significant concern for the trial court, it was troubled by the deep-rooted acrimony and constant bickering between the parties as well. Taking both of these issues into account, the trial court's findings regarding proper cause and change of circumstances were not against the great weight of the evidence.

The evidence established that LH missed over half the virtual class sessions in the first seven school days. Defendant maintained that LH's absences were caused by technical difficulties that were resolved when defendant exchanged the laptop issued to LH by the school. However, defendant did not take action to have the laptop replaced until September 14, 2020—six days after school had begun. Even after the laptop was replaced, LH missed virtual sessions again on September 18, 2020. These absences demonstrated that defendant was either not prioritizing LH's school attendance or was otherwise unable to ensure that LH had the necessary resources to participate in school remotely. Additionally, plaintiff had to pick up LH's school supplies and drop them off at defendant's home because defendant claimed she did not receive the teacher's e-mail regarding supplies. As it related to VH, defendant testified that the parties had not been able to agree on the best place to enroll VH for preschool. There was also testimony that the parties' communications about a variety of subjects, especially schooling, was beyond strained and often required intervention by their attorneys to facilitate timely, appropriate responses. The trial court's findings of proper cause and change of circumstances were supported by the record because the schooling issues that arose in this case and the parties' inability to make joint decisions in the children's best interests would likely have a significant effect on the children's education and general wellbeing, particularly in the then-current climate in which the availability of in-person classes was changing on a near daily basis.

Next, defendant challenges the trial court's determination that nearly every statutory best-interest factor favored plaintiff.[2] Although we agree that the trial court erred with respect to several factors, we are not persuaded that the errors require reversal in this case.

---

[1] We note that the *Vodvarka* definitions of proper cause and change of circumstances apply only when the modification of parenting time alters the child's established custodial environment. *Shade v Wright*, 291 Mich App 17, 25-28; 805 NW2d 1 (2010). When modification does not impact the established custodial environment, a more expansive definition is applied. *Id*. at 27-28. The trial court found that the children had an established custodial environment with both parents, but conducted its analysis as though such environment existed only with defendant at the time of plaintiff's motion. This aspect of the trial court's ruling is not challenged on appeal.

[2] The court took LH's preferences into account under MCL 722.23(i), but opined that VH was too young to express an opinion. The court also found "no competent evidence that allows me to favor either parent under Factor G." Defendant does not challenge the findings regarding either of these factors, so they will not be discussed herein.

Before modifying a child's established custodial environment, the trial court must find clear and convincing evidence that the change is in the child's best interests. *Griffin v Griffin*, 323 Mich App 110, 119; 916 NW2d 292 (2018). The best-interest analysis is guided by the statutory factors set forth in MCL 722.23. *Id*.

Beginning with factor (a), which considers "[t]he love, affection, and other emotional ties existing between the parties involved and the child," MCL 722.23(a), we agree with defendant that the trial court's finding was contrary to the great weight of the evidence. In support of its finding favoring plaintiff, the trial court relied on defendant's periodic inquiries into relocating the children and her inaction when the children were misbehaving during a particular parenting-time exchange, reasoning that defendant was unable to prioritize the children over her own desires. While these facts may be relevant to other factors, they have no bearing on the existence of the children's love, affection, and emotional ties. The totality of the evidence generally established that the children had a loving and playful relationship with defendant, who was their primary caregiver the majority of their lives. Even plaintiff acknowledged the existence of strong ties between the children and defendant. The trial court erred by finding that factor (a) favored plaintiff only.

Factor (b) considers "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court focused on the education aspect of this factor, noting that plaintiff was committed to furthering the children's early education, while defendant was willing to uproot LH from her school on a whim and failed to take swift action to address LH's malfunctioning computer at the beginning of the school year. The court did not err in this regard. Defendant's belief that LH would be unaffected by a change in school because of her young age and failure to appreciate the urgency of the technological issues LH faced reflected a short-sighted attitude that could impair defendant's ability to provide the children with much needed guidance.

Defendant also argues that factor (b) should have favored her because she was the only parent to further the children's religious activities. The trial court, however, opined that defendant's testimony regarding the family's church activities "seemed to be more about her winning this motion than concern about the girls and what it is they need." Defendant described the children's involvement in online church activities in lieu of in-person attendance and asserted that she placed great value on the children's exposure to religion. But when the court asked if she suggested the children participate in the same online activities during plaintiff's parenting time, defendant conceded that she did not, thereby supporting the trial court's opinion regarding the sincerity of defendant's testimony and decision to afford it little weight. As fact-finder, the trial court was in the best position to assess witness credibility and determine the appropriate weight to give each factor. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). This Court will not interfere with such determinations on appeal. *Id*.

Factor (c) considers "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court observed that defendant was likely underemployed, had not taken advantage of the current job market, and that plaintiff provided significant financial contributions to the children's upbringing. Defendant argues that the trial court should have made allowances for the way the

COVID-19 pandemic impacted her employment industry, but the court was not concerned about defendant's minimal income as a hair stylist. Rather, it took issue with her failure to seek employment in other fields that were sorely in need of workers. More importantly, defendant was already receiving child support and only described purchasing boutique style collectible dresses for the children. Plaintiff, on the other hand, testified that he ensured that the children had clothing essentials, including properly fitting clothes, undergarments, and winter gear. Plaintiff was also paying all the out-of-pocket cost for the children's counseling after defendant indicated that she did not have any money to contribute to the expense. On this record, the trial court did not err by finding that factor (c) favored plaintiff.

The trial court addressed factors (d) and (e) together. Factor (d) considers "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). Factor (e) considers "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court found these factors favored plaintiff because there were several instances in which defendant considered uprooting the children, even if she did not ultimately act on those possible relocations, and the court believed that defendant was actually living with her previous boyfriend in Sandusky for a period of time in 2020. The court also observed that while both parties occasionally cohabited with significant others, plaintiff was in a long-term relationship.

The evidence established that defendant was living in the parties' marital home and was required to remain there by the terms of the divorce judgment until September 2022, at which time the house would be sold. Thus, to the extent defendant's home provided a more stable and consistent physical environment for the children, that consistency was all but guaranteed to end in the near future. Moreover, despite the divorce judgment requirement that defendant remain in the marital home for the specified period, there was some suggestion that she might move to Perry shortly after the divorce, and she personally raised the possibility of relocating with the children to Sandusky in early 2020. Defendant admitted that she sometimes stayed overnight in Sandusky, and there was evidence supporting the trial court's belief that defendant was minimizing the frequency of those stays, namely, a number of Our Family Wizard messages referencing a long drive for parenting-time exchanges, despite the close proximity of the parties' residences.

Plaintiff, on the other hand, was residing with his sister after the parties' divorce and had only recently moved into his home at the time of the evidentiary hearings. However, he testified that he had no plans to move because he believed structure and consistency were important to the children's development. Additionally, plaintiff's new home was in Livonia near the marital residence, so the children remained in an area and school district they were familiar with. With respect to the family unit within the parties' respective homes, plaintiff was dating the same person for nearly 1½ years by the time of the trial court's ruling, while defendant had recently begun dating a new person after ending her engagement to another man sometime in April 2020. The trial court did not err with respect to factors (d) and (e).

Factor (f) considers "[t]he moral fitness of the parties involved." MCL 722.23(f). The trial court found that this factor favored plaintiff because it viewed much of defendant's testimony as evasive and misleading. The trial court's reasoning is faulty because factor (f) addresses immoral conduct "only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent*." *Berger*, 277 Mich App at 712, quoting *Fletcher v Fletcher*, 447 Mich 871,

887; 526 NW2d 889 (1994) (quotation marks omitted). While the trial court was free in its role as fact-finder to assess defendant's credibility, her in-court candor does not significantly influence her parenting and, therefore, should not have been the basis for finding factor (f) in favor of plaintiff.

Factor (h) considers "[t]he home, school, and community record of the child." MCL 722.23(h). The trial court expressed concern about defendant's ability to assist the children through school in light of her handling of LH's absences at the beginning of the year. Defendant argues that the short-term problem with LH's computer did not rise to the level of a material change of circumstances that would warrant a change in custody. But, as explained earlier, the problems LH faced at the beginning of first grade and the parties' unending inability to agree on important parenting decisions constituted sufficient proper cause and change of circumstances to reconsider custody. Defendant's only argument about the children's schooling as a best-interest factor is that LH was previously doing well in school when defendant was the primary caregiver. But plaintiff offered evidence that LH had a nearly perfect attendance record in his care, and that her reading was rapidly improving since she began residing with him during the school week. The trial court's finding that factor (h) favored plaintiff was not contrary to the great weight of the evidence.

Factor (j) considers "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court found that this factor favored plaintiff because defendant frequently tried to relocate the children further away from plaintiff, disrupted plaintiff's parenting time, and attempted to provoke inappropriate responses from plaintiff. The trial court's reasoning was supported by the record, including testimony regarding defendant's inquiries about moving and unannounced appearances at plaintiff's home and LH's school. We acknowledge, however, that the evidence also included many examples of instances when plaintiff's actions likely discouraged or interfered with defendant's relationship with the children, such as the two-week period in 2020 when plaintiff refused to permit defendant parenting time because she had traveled out of state during the initial surge of COVID-19 cases in this state. Although plaintiff admitted this specific conduct, he denied most of the other allegations levied by defendant. Importantly, the weight of the evidence regarding plaintiff's behaviors hinged on defendant's credibility, and this Court must defer to the trial court's negative view on that point. *Berger*, 277 Mich App at 705. Consequently, defendant has not established that the trial court's finding regarding factor (j) was erroneous.

Factor (k) addresses "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). Defendant takes issue with the trial court's determination that this factor was not relevant to its decision despite evidence that plaintiff's assault of defendant was the impetus for the parties' divorce. Defendant testified that plaintiff forced entry into their bathroom in April 2018, and hit her while she was holding VH. She also indicated that plaintiff often had angry outbursts when he drank, but admitted that she had not seen plaintiff intoxicated or had a violent encounter with him since 2018. The trial court acknowledged the assault incident, but found it irrelevant because the incident did not lead to a criminal conviction and there was no evidence that plaintiff had a continuing problem with alcohol. Additionally, the court opined that defendant's focus on the past domestic violence was a tactic to deflect attention from the actual matter at hand. It was within the trial court's discretion to assign differing weight to the best-interest factors, *Berger*, 277 Mich App at 705, and the trial court

-6-

articulated fair reasoning for finding little value in the evidence regarding this factor. This Court does not conclude that the trial court's finding was against the great weight of the evidence.

Factor (*l*) considers "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). Relevant to this factor, the court cited defendant's history of failing to "govern herself and act in conformity with court orders," and concluded that factor (*l*) favored plaintiff. As defendant notes on appeal, the trial court made no mention of plaintiff's violations of court orders, which included a two-week deprivation of parenting time. Regardless of this oversight, however, the trial court erred in its analysis of this factor because failure to abide by court orders is not generally relevant to the evaluation of the children's best interests for purposes of determining custody. *Maier v Maier*, 311 Mich App 218, 227; 874 NW2d 725 (2015).

Lastly, defendant argues that the trial court erred by granting plaintiff sole legal custody and ordering parenting time in a manner that effectively gave plaintiff primary physical custody. We disagree.

Although defendant has established that the trial court erred by finding that factors (a), (f), and (*l*) favored plaintiff only, it does not necessarily follow that the trial court abused its discretion by awarding parenting time in a manner resulting in primary physical custody resting with plaintiff. In *Maier*, 311 Mich App at 227, the trial court's error regarding two factors was deemed harmless because four other factors favored the defendant and none favored the plaintiff. This Court explained that "it is not only necessary for [the plaintiff] to show that the trial court erred in its consideration of some of the factors that favored defendant, but also that some of the factors favored her." *Id*. The same reasoning applies here because there is insufficient evidence from which this Court can conclude that any of the erroneously decided factors should have favored defendant. Rather it appears, at best, that factors (a), (f), and (*l*) should have been considered neutral or to favor the parties equally.

The trial court also granted plaintiff sole legal custody after noting repeatedly in its ruling that the tension and bitterness between the parties left them unable to cooperate regarding important decisions. Joint legal custody refers to the arrangement in which " 'parents shall share decision-making authority as to the important decisions affecting the welfare of the child.' " *Dailey v Kloenhamer*, 291 Mich App 660, 670; 811 NW2d 501 (2011), quoting MCL 722.26a(7)(b). In deciding whether joint legal custody is appropriate, the court must consider the parties' ability to cooperate and generally agree on such decisions. *Bofysil v Bofysil*, 332 Mich App 232, 249; 956 NW2d 544 (2020). As recently reiterated by this Court:

> In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making. If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children. [*Id*., quoting *Fisher v Fisher*, 118 Mich App 227, 232-233; 324 NW2d 582 (1982).]

Here, the trial court correctly recognized the overwhelming evidence that the parties were unable to cooperate or effectively coparent, necessitating an award of sole legal custody to one parent. Two key aspects of parenting were discussed at length before the trial court—the children's education and medical care. As it related to both of these topics, plaintiff and defendant could not see eye to eye or compromise to reach appropriate decisions in the children's best interests. Instead, they bickered or failed to respond to one another's inquiries and suggestions, frequently requiring their attorneys to intervene to advance the discussions. On more than one occasion, their disagreements completely halted progress on important matters like school enrollment, participation in counseling, and standard vaccinations recommended by medical professionals. Because it was readily apparent that the parties could not share decision-making authority with respect to important decisions affecting the children's welfare, the trial court did not err by determining that joint legal custody was no longer a feasible option in this case. And because several of the best-interest factors favored plaintiff and none favored defendant, it was not an abuse of discretion to award plaintiff sole legal custody.

Affirmed.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Michelle M. Rick