# STATE OF MICHIGAN

# COURT OF APPEALS

JASON ANDREW GRIFFIN,

        Plaintiff-Appellant,

v

REBEKAH MARIE GRIFFIN,

        Defendant-Appellee.

FOR PUBLICATION
January 30, 2018
9:00 a.m.

No. 338810
Ingham Circuit Court
LC No. 12-002812-DM

Before: MURPHY, P.J., and M. J. KELLY and SWARTZLE, JJ.

M. J. KELLY, J.

In this child custody case, plaintiff, Jason Griffin, appeals as of right from the trial court order denying his motion to change custody of the parties' minor child and granting the motion to change custody filed by defendant, Rebekah Griffin.[1]  Because the trial court erred by applying the preponderance-of-the-evidence standard instead of the statutorily mandated clear-and-convincing-evidence standard to the best-interests determination under MCL 722.23 of the Child Custody Act, MCL 722.21 *et seq.*, we reverse and remand for further proceedings.

## I. BASIC FACTS

Jason and Rebekah were divorced by consent judgment in March 2013.  They have one child, and from the time of divorce until this matter rose, they shared equal physical custody using a two-week on/two-week off schedule.  On January 20, 2016, Rebekah, who is an active duty member of the United States Coast Guard, received orders to report to a new duty station in Willowbrook, Illinois, approximately 3 hours and 52 minutes from Jason's home in Holt, Michigan.  Following a hearing on March 31, 2016, the court entered an order allowing Rebekah to change her legal residence with the child from Auburn Hills, Michigan, to Willowbrook, Illinois.  The order stated that the child's legal residence with Jason would remain in Holt and the parenting time schedule would continue.

---

[1] For ease of reference, this Court will refer to the parties by their first names.

-1-

On January 19, 2017, Jason filed a motion to change custody, parenting time, and child support. He asserted that the parties' child would turn five years old in February 2017, and would start kindergarten in the fall of 2017. Jason argued that his son could not continue to split his time between his parents every two weeks while attending school and that his son's need to start school was a material change in circumstances warranting review of the custody arrangement. Jason argued that the best-interest factors under MCL 722.23 weighed in favor of granting him full legal and physical custody of Jason and awarding Rebekah reasonable parenting time.

On February 16, 2017, Rebekah filed an answer to Jason's motion. She also filed her own motion to modify custody, parenting time, and child support. Rebekah contended that the best-interest factors favored her receiving full legal and physical custody of the parties' child, not Jason. The matter was referred to the friend of the court (FOC) for investigation, which took place on February 22, 2017, with both parties and their lawyers present. The FOC investigator stated in his report that the parties agreed to the "threshold for modification," but could not otherwise reach an agreement. The investigator recommended that the child reside with Jason during the school year and attend Holt Public Schools, and that Rebekah be granted parenting time according to a holiday schedule, which included every summer break. The investigator recommended the child go to school in Holt because both parties' extended families lived in the area and Rebekah frequently travels to the area to visit with them.

Both parties filed objections to the investigator's recommendation. Jason argued that it would not be in his son's best interests for him to be away from him for the entire summer and that his son should be with him every other weekend during summer break and two weeks prior to the start of school. Jason also asserted that he should be awarded alternating holidays and half of the winter break. Rebekah objected to her son attending a public school in Holt, arguing that the school ranks only in the 58th percentile among Michigan's public schools. She contended that the school the child attends in Illinois—Marquette Manor—was ranked "37th out of 119 for the 2017 best private high schools in Illinois" and "15th out of 36 for 2017 best private K-12 schools in Illinois" as well as "3rd out of 32 for 2017 best Christian high schools in Illinois." Rebekah argued that Marquette Manor's "A Beka" curriculum was superior to the Michigan Public Schools' common-core curriculum. Rebekah also argued that the parties had agreed before marrying that their children would attend a Baptist school, and she asserted that Jason enrolled the child in public school without her consent. She additionally raised concerns about domestic violence committed by Jason against her, about Jason alienating the child from her, and about Jason hindering her ability to receive medical care for her son in Illinois. Finally, she contended that the child did not have an established custodial environment with Jason.

Jason filed a written response to Rebekah's objections, challenging the validity of the school statistics and noting that the sources cited by Rebekah were publications the developers of the A Beka curriculum had published. He also challenged Rebekah's argument that he was attempting to alienate the child from Rebekah, and challenged the argument that there was no established custodial environment with him. Jason noted that Rebekah's decision to reenlist in the Coast Guard in 2016 was commendable, but argued that it would create instability for their child if he were in her care because she had to move to Illinois and would likely have to move again after 2020. Jason asserted that he intended to stay in Holt, which would provide a more

stable environment for the child. Finally, Jason contended that Rebekah's accusations of domestic violence were baseless.

The court held a hearing on the parties' objections in May 2017, and both parties testified. At the conclusion of the hearing, the trial court noted that "it appears we have two very good parents who care deeply about their child." Thereafter, the court entered a written order and opinion awarding primary custody of the child to Rebekah during the school year and primary custody to Jason during the summer. Jason was also awarded spring break, the entire week of Thanksgiving, and half of Christmas break. Relevant to this appeal, the trial court found that the change in custody was in the child's best interests by applying the preponderance of the evidence standard. The court then considered each of the best-interest factors under MCL 722.23. The court found factors a, c, and e through i, equal for both parties, factors b, d, j, and k in favor of Rebekah, and factor *l* in favor of Jason. When weighing the best-interest factors, the trial court noted, but did not consider evidence that Rebekah would likely have to relocate in 2020 because of her active duty status in the Coast Guard.

Jason moved for reconsideration of the order, challenging the court's application of a preponderance-of-the-evidence standard and the court's decision not to consider Rebekah's anticipated relocation. The trial court denied his motion.

## II. BURDEN OF PROOF

### A. STANDARD OF REVIEW

Jason argues that the trial court applied the wrong burden of proof when it evaluated the best interest factors under MCL 722.23. "The applicable burden of proof presents a question of law that is reviewed de novo on appeal." *Pierron v Pierron*, 282 Mich App 222, 243; 765 NW2d 345 (2009) (quotation marks and citation omitted). Further, we review de novo the proper interpretation and application of a statute. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

### B. ANALYSIS

When a parent moves for a change of custody, he or she must first establish that there is a change of circumstances[2] or proper cause[3] to revisit the custody decision. *Vodvarka v*

---

[2] "[I]n order to establish a 'change of circumstances,' a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed." *Vodvarka*, 259 Mich App at 513 (emphasis omitted). "[T]he evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514.

*Grasmeyer*, 259 Mich App 499, 508-509; 675 NW2d 847 (2003); MCL 722.27(1)(c). If that threshold is satisfied, the trial court must determine whether the child has an established custodial environment.[4] "Where no established custodial environment exists, the trial court may change custody if it finds, by a preponderance of the evidence, that the change would be in the child's best interests." *LaFleche v Ybarra*, 242 Mich App 692, 696; 619 NW2d 738 (2000). "However, where an established custodial environment does exist, a court is not to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." *Id*. See also MCL 722.27(1)(c). Stated differently, "[t]o determine the best interests of the children in child custody cases, a trial court must consider all the factors delineated in MCL 722.23(a)-(*l*) applying the proper burden of proof," *Foskett v Foskett*, 247 Mich App 1, 9; 634 NW2d 363 (2001), and the proper burden of proof is based on whether or not there is an established custodial environment, *LaFleche*, 242 Mich App at 696.

In this case, the trial court sua sponte decided that, although a change in custody would alter the child's established custodial environment thereby necessitating application of the clear and convincing standard, it was only required to apply a preponderance of the evidence standard.[5] The court reasoned that because Jason and Rebekah "have the same burden [of proof], and a change must be made, it is appropriate to weigh the factors using a preponderance of the evidence." We disagree.

---

[3] "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka*, 259 Mich App at 511.

[4] An established custodial environment exists "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). "The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." MCL 722.27(1)(c).

[5] The dissent suggests that, arguably, the trial court order did not change the child's established custodial environment. We agree that such an argument, based on the facts before the trial court and applicable caselaw, could *potentially* be made. However, the trial court did, in fact, find that the child's established custodial environment existed with both parents and that the change of the custody would alter it. The parties have not challenged that finding on appeal. And, even if they had, our review of a trial court's decision that a change in custody would change a child's established custodial environment is not de novo. Such a decision is reviewed "under the great weight of the evidence standard and will be affirmed unless the evidence clearly preponderates in the opposite direction." *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006) (quotation marks and citation omitted). Thus, the mere fact that an argument could have been made on this point has no bearing on the outcome of this case.

-4-

When interpreting a statute, we must ascertain the Legislature's intent. *Kubicki v Sharpe*, 306 Mich App 525, 539; 858 NW2d 57 (2014). "We accomplish this task by giving the words selected by the Legislature their plain and ordinary meanings, and by enforcing the statute as written." *Id*. Here, the relevant statutory language provides: "The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). The words "shall not" indicate a prohibition. *1031 Lapeer LLC v Rice*, 290 Mich App 225, 231; 810 NW2d 293 (2010). Thus, before a court may enter an order modifying its prior custody order in a fashion that alters the child's custodial environment, the court must first find *by clear and convincing evidence* that such a change is in the best interest of the child, and the court is prohibited from applying a lower standard.[6] Despite the clear statutory language, the trial court applied a preponderance of the evidence standard to the best interest determination.

The court based its decision to apply a lesser burden of proof on this Court's decisions in *Heltzel v Heltzel*, 248 Mich App 1; 638 NW2d 123 (2001), and *Rummelt v Anderson*, 196 Mich App 491; 493 NW2d 434 (1992), abrogated by *Hunter v Hunter*, 484 Mich 247; 771 NW2d 694 (2009). Those cases, however, dealt with custody disputes between a natural parent (entitled to the presumption in MCL 722.25(1) that it is in the child's best interest for his or her natural parent to be awarded custody) and a third party with whom the child has an establish custodial environment with (entitled to the presumption in MCL 722.27(1)(c) that a child's established custodial environment should not be disturbed in the absence of clear and convincing evidence that such a disruption is in the child's best interest). *Rummelt*, 196 Mich App at 494-493; *Heltzel*, 248 Mich App at 13-14.[7] Consequently, they are inapposite to the situation at hand, which is a dispute between two natural parents. Further, as recognized in *LaFleche*, 242 Mich

---

[6] C.f. *Hunter v Hunter*, 484 Mich 247, 265-266; 771 NW2d 694 (2009) (holding that a natural parent does not have to establish by clear and convincing evidence that disturbing the child's established custodial environment with a third party is in the child's best interests because a third party bears the burden of establishing by clear and convincing evidence that placing the child with the natural parent is *not* in the child's best interests).

[7] Although *Rummelt* held that a court need only apply a preponderance of the evidence standard when faced with competing, "equal" presumptions under MCL 722.27(1)(c) and MCL 722.25, *Rummelt*, 196 Mich App at 494, our Supreme Court later clarified that because a parent has a constitutional right to parent his or her child, in custody disputes between natural parents and a third party with whom the child has an established custodial environment, the third party must establish by *clear and convincing evidence* that custody with the natural parent is *not* in the child's best interest. *Hunter*, 484 Mich at 265-266. On appeal, Rebekah recognizes that *Hunter* overruled *Rummelt*; however, she argues that in essence *Hunter* stands for the proposition that when two presumptions are not given equal weight, the one that has more weight will prevail. She asserts that in this case, given that both parents have a constitutional interest in parenting their child, the presumption under MCL 722.27(1)(c) is equal, so the reasoning in *Rummelt* should apply. We disagree, however, because that reasoning is contrary to the plain language of the statute.

-5-

App at 699, if a custody dispute "is between the natural parents, clear and convincing evidence must be presented to justify a change in custody."

Having concluded that the trial court applied the wrong standard, we nevertheless recognize that the court was faced with a somewhat unique problem: everyone agreed that maintaining the current custodial arrangement was not in the child's best interests. Both parties moved for a change in custody, advancing their own arguments in favor of receiving primary custody of their son during the school year. Given the facts presented to the trial court, it is arguable that when compared to each other, neither Jason's proposed change nor Rebekah's proposed change was, by clear and convincing evidence, superior to the other's proposal.

However, MCL 722.27(1)(c) does not require that one parent's proposed change must be better than the other parent's proposal by a clear-and-convincing-evidence standard. See MCL 722.27(1)(c). As such, the trial court is not tasked with comparing the parties' suggested changes to each other and determining which is better. Rather, in order to make a change to the established custodial environment, the trial court must find that the change is in the child's best interests when compared to the status quo. See *Foskett*, 247 Mich App at 8 (stating that when a child has an established custodial environment with both parents, neither parent's "established custodial environment may be disrupted except on a showing, by clear and convincing evidence, that such a disruption is in the children's best interests"); see also MCL 722.27(1)(c). Stated differently, the child's established custodial environment is the status quo, so in order to modify it the court must find by clear and convincing evidence that the change is in the child's best interests when compared to the status quo, not when compared to every other conceivable or suggested modification. In doing so, the court is free to adopt either party's proposal in whole or in part, but it is equally permissible for the court to fashion an entirely new custody arrangement or to maintain the existing custody arrangement. The key is that the court must first find by clear and convincing evidence that the new custodial arrangement is in the child's best interests.

In sum, the trial court erred by applying a preponderance-of-the-evidence standard when weighing the best interest factors in MCL 722.23.[8] The court should have instead applied the clear-and-convincing evidence standard when determining whether to maintain the status quo or enter an order changing the child's established custodial environment.[9]

## III. ACTIVE DUTY STATUS

## A. STANDARD OF REVIEW

Jason argues that the trial court erred as a matter of law when it excluded consideration of Rebekah's likely relocation in 2020 due to her active duty status with the Coast Guard. Reasoning that the potential move would be due to Rebekah's military service, the court determined that MCL 722.27(1)(c) wholly prohibited it from considering the move. Because this legal issue is likely to recur on remand, we will address it.[10] Again, we review de novo issues relating to the proper application and interpretation of a statute. *Brecht*, 297 Mich App at 736.

## B. ANALYSIS

---

[8] We do not agree with the dissent that the error was harmless simply because the court found, by a preponderance of the evidence, that four of the best-interest factors favored Rebekah and only one favored Jason. The dissent reasons that under such circumstances the trial court would be "forced again" to rule in Rebekah's favor. However, under a clear-and-convincing-evidence standard, it is possible that the trial court would find that factors favoring Rebekah under the preponderance-of-the-evidence standard now favor neither party, but that the single factor favoring Jason satisfies the clear-and-convincing-evidence standard. Thus, arguably, the trial court would find that the best-interest factors favor placing the child with Jason during the school year, not with Rebekah. Alternatively, applying the correct standard, the court could find that four factors favor Rebekah, but none favor Jason. It could also find that all of the factors are essentially equal, but that under MCL 722.23(*l*), the undisputed need to make a change mandates a new custodial arrangement. Quite simply, applying the clear-and-convincing-evidence standard rather than the less demanding preponderance-of-the-evidence standard can dramatically alter the number of factors favoring either party. Thus, reversal is both warranted and required under the facts of this case.

[9] We note that, if the court felt that inadequate evidence had been presented to establish by clear and convincing evidence that a change in the child's established custodial environment was in the child's best interests, it could have requested the parties present additional evidence in support of their respective positions.

[10] Jason also challenges several of the trial court's factual findings on the best-interest factors. However, on remand, the trial court must conduct a new best-interest hearing applying the correct burden of proof. In doing so, the court must consider all relevant, up-to-date information. *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994). Consequently, it is possible that, in light of the up-do-date information, the court may weigh the best-interest factors differently, rendering any review of them now premature.

Relevant to this issue, MCL 722.27(1) provides that "[i]f a motion for change of custody is filed while a parent is active duty, the court shall not consider a parent's absence due to that active duty status in a best interest of the child determination."[11]  Whether this provision precludes a trial court from considering a parent's anticipated future relocation due to his or her active duty status when making a determination of a child's best interest is an issue of first impression.  Because the term "absence" is not defined, we may consult a dictionary to determine its common and ordinary meaning.  See *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012).  According to the *Merriam-Webster Collegiate Dictionary* (11th ed), absence is "the state of being absent."  In turn, "absent" is defined as "not present or attending: missing."  *Id*.  Therefore, a parent is absent from his or her child is he or she if not physically present.

Moreover, under the language of the statute, a trial court is only prohibited from considering a parent's current, not future absences from the child due to his or her active duty status.  This is in contrast to MCL 722.27(4), which applies to parents who are deployed, rather than parent's who are merely on active duty status.  MCL 722.27(4) provides in relevant part:

> If a motion for change of custody is filed after a parent returns from deployment, the court shall not consider a parent's absence due to that deployment in making a best interest of the child determination.  Future deployments shall not be considered in making a best interest of the child determination.

---

[11] Rebekah contends that we should also consider MCL 722.27(4), which provides in part that a parent's "[f]uture deployments shall not be considered in making a best interest of the child determination."  However, there is no indication in the record that Rebakah will be deployed in the future.  The term deployment is defined as follows in MCL 722.22(e):

> (e) "Deployment" means the movement or mobilization of a servicemember to a location for a period of longer than 60 days and not longer than 540 days under temporary or permanent official orders as follows:
>
> (*i*) That are designated as unaccompanied.
>
> (*ii*) For which dependent travel is not authorized.
>
> (*iii*) That otherwise do not permit the movement of family members to that location.
>
> (*iv*) The servicemember is restricted from travel.

Here, there is nothing in the record that indicates Rebekah's future relocation will be to a place where the requirements in MCL 722.22(e)(*i*) through (*iv*) will be satisfied.  As such, under the present circumstances, she is accorded no protection by MCL 722.27(4).

Unlike the provision in MCL 722.27(1)(c), which only addresses a parent's "absence due to [his or her] active duty status," MCL 722.27(4) addresses both a parent's "absence due to [his or her] deployment" and any future deployments. The omission of a provision in one part of a statute that is included in another part should be construed as intentional. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). Therefore, under MCL 722.27(1)(c) only a parent's current absence from a child due to that parent's active duty status shall be considered by the trial court when making a determination about the child's best interests.

Here, there is no evidence on the record suggesting that Rebekah was currently absent from the child because of her active duty status with the Coast Guard. Instead, the record reflects that the child had an established custodial environment with her and that she cared for him on an alternating two week on/two week off schedule with the child's father. She testified that she currently lives in Willowbrook, Illinois and works for the Coast Guard as a yeoman (an administrative assistant). She stated that she works Monday through Friday from 8:00 to 4:00. She testified that she lives alone in a two-bedroom condominium. Rebekah testified that the child looks to her for care and comfort and that she is able to meet his needs. She also explained that her son attends pre-school at Marquette Manor when she is working. Rebekah stated that she has in the past had to travel for work or training, but that she never had to travel when her child was with her. She testified that her command would schedule her trips so she would not have to be absent from the child. Rebekah further stated that she used to work overnight shifts but that is no longer required. Based on the record, it is apparent that at the time of the hearing, Rebekah was not absent from her child due to her active duty status. She was fully present in her child's life. Therefore, because the statute only prohibits the court from considering current absences due to active duty status, we conclude that the trial court erred by interpreting and applying MCL 722.27(1)(c) so as to wholly preclude consideration of Rebekah's anticipated future relocation due to her military service.[12]

### III. CONCLUSION

In sum, we conclude that the trial court erred by applying a preponderance of the evidence standard when weighing the best interest factors in MCL 722.23. Therefore, we reverse the court's order awarding custody to Rebekah and remand for further proceedings. On remand, the trial court shall conduct a new best-interest hearing, where it must consider all relevant, up-to-date information. *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994). The court shall not grant sole custody of the child to Rebekah unless she can establish by clear and convincing evidence that such placement is in the child's best interest, nor shall the

---

[12] We note that, although a trial court is not prohibited from considering the fact that a parent may be required to relocate (short of deployment) in the future due to his or her active duty status, the weight given to that consideration is still within the discretion of the court. We caution courts that although a relocation may occur in the future, the effects of that move on the child will often be speculative, which may compel a court to afford the future move less weight when determining the child's best interests.

court grant sole custody of the child to Jason unless he can establish by clear and convincing evidence the change will be in the child's best interest.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle