*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANGELA YOUNG,

Plaintiff-Appellant,

v

BETHEL YOUNG,

Defendant-Appellee.

UNPUBLISHED
December 22, 2022

No. 362014
Arenac Circuit Court
Family Division
LC No. 19-014088-DM

Before: HOOD, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

In this custody case, plaintiff, Angela Young, appeals as of right the trial court's order denying her motion for sole legal custody and relocation of her minor children. Angela was previously married to defendant, Bethel Young, and they have two children together, BY and AY. We vacate the denial of Angela's requests for sole legal custody and to change her children's domicile and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This appeal arises from Angela's motion for sole legal custody of BY and AY and to change their domicile. Angela and Bethel share two minor children: BY, born in 2012, and AY, born in 2014. Angela and Bethel divorced in 2019. The judgment of divorce awarded the parties joint legal custody, with Angela having physical custody of both children.

In March 2022, Angela moved for change of domicile and change in legal custody. At the time, Angela was employed as a traveling nurse based in Detroit where she was paid $33 an hour and had to obtain health insurance on the market. At the hearing on Angela's motion, she testified that she had been offered a job in Montana that paid $55 an hour and had a full benefit package. Angela, who had been diagnosed with multiple sclerosis (MS), also testified that her desire to move was also based on her belief that Montana's climate and elevation would slow the progression of her illness. She testified that she had secured the necessary financing to purchase a 142-acre property in Montana on which she hoped to operate a horse farm. Finally, Angela was excited by the opportunity to participate in guided hunting and fishing trips.

-1-

The motion hearing was on May 19, 2022. At the time of the hearing, Bethel by his own admission had not seen the children since April 2021. At the time, Bethel was entitled to regularly scheduled supervised parenting times, but he repeatedly failed to participate. There was conflicting evidence regarding whether Angela had made efforts to frustrate Bethel's ability to secure a parenting-time supervisor, but it was undisputed that Bethel never filed motions regarding this issue. It was likewise undisputed that before Bethel stopped seeing the children Angela would regularly contact the police and Child Protective Services (CPS) to make allegations against Bethel that were ultimately unsubstantiated.

Much of the testimony revolved around Aaron Rettelle, who Angela described as her friend and roommate; Angela testified that they were not in a romantic relationship, and there was no evidence to dispute this. Rettelle was Angela's primary babysitter, and as such, he was routinely left alone with the children. Angela intended for Rettelle to accompany her to Montana where he would continue to fill the same role. Rettelle, however, has an extensive history of child abuse and domestic violence involving his other children and previous romantic partners. Angela was aware of and acknowledged Rettelle's history with CPS as well as his criminal record. Despite this knowledge, however, she stated that she took his word that none of the allegations made against him were true and that he was the repeated victim of false accusations. The court, which appeared to have some independent knowledge or history with Rettelle, was alarmed by Angela's dismissive attitude toward Rettelle's history of violence and by her willingness to accept his version of events.

At the conclusion of the hearing, the trial court denied Angela's request for sole legal custody and her request to relocate. Rettelle's continued presence in the life of Angela and the children played a major role in the court's analysis, particularly with respect to custody. This appeal followed.

## II. LEGAL CUSTODY

Angela argues that the trial court erroneously denied her motion for a change of custody because it relied on facts not in evidence. We conclude, however, that the trial court erred for a different reason: it failed to follow the proper framework for analyzing a request for a change of custody and, based on its statements on the record, should not have even reached analysis of the best-interest factors.

## A. STANDARDS OF REVIEW

MCL 722.28 provides that when reviewing a lower court order in a custody dispute, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." This statute "distinguishes among three types of findings and assigns standards of review to each." *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011) (quotation marks and citation omitted). Factual findings "are reviewed under the 'great weight of the evidence' standard." *Id*. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or

applies the law." *Id*. (quotation marks and citation omitted). "Discretionary rulings, such as to whom custody is awarded, are reviewed for an abuse of discretion. An abuse of discretion exists when the trial court's decision is palpably and grossly violative of fact and logic." *Dailey*, 291 Mich App at 664-665 (quotation marks, citations, and alteration omitted).

## B. LAW AND ANALYSIS

Here, the trial court made a clear legal error. The trial court stated that it was "not sure" there had been a change of circumstances that warranted revisiting the custody decision. Despite this finding, the trial court proceeded to determine that there was an established custodial environment with Angela, but denied her request because it was not in her children's best interests to change custody. This was error.

In Michigan, the Child Custody Act, MCL 722.21 *et seq*., " 'applies to all circuit court child custody disputes and actions, whether original or incidental to other actions.' " *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting MCL 722.26(1). In *Griffin v Griffin*, 323 Mich App 110, 118-120; 916 NW2d 292 (2018), this Court provided a summary of the relevant framework for analyzing a request to change custody:

> When a parent moves for a change of custody, he or she must first establish that there is a change of circumstances or proper cause to revisit the custody decision. If that threshold is satisfied, the trial court must determine whether the child has an established custodial environment. Where no established custodial environment exists, the trial court may change custody if it finds, by a preponderance of the evidence, that the change would be in the child's best interests. However, where an established custodial environment does exist, a court is not to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. Stated differently, to determine the best interests of the children in child custody cases, a trial court must consider all the factors delineated in MCL 722.23(a)-(l) applying the proper burden of proof, and the proper burden of proof is based on whether or not there is an established custodial environment. [Quotation marks, citations, and footnotes omitted.]

Under this framework, before the court may determine whether there exists an established custodial environment and analyze the best-interest factors, the moving party must first establish that there is a change of circumstances or proper cause that warrants revisiting the custody decision. See *Stoudemire v Thomas*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 360441); slip op at 4 ("[W]hen seeking to modify a custody or parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests."); *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011), citing MCL 722.27(1)(c) ("A trial court may only consider a change of custody if the movant establishes proper cause or a change in circumstances."); *Corporan v Henton*, 282 Mich App 599, 603; 766 NW2d 903 (2009) ("[A] party seeking a change in the custody of a child is required, as a threshold matter, to first demonstrate to the trial court either proper cause or a change of circumstances."). "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the

extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka v Grasmeyer*, 259 Mich App 499, 511; 675 NW2d 847 (2003). To establish proper cause to revisit a custody order, the party seeking to change custody must

> prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being. [*Id*. at 512.]

Regarding a "change of circumstances," the *Vodvarka* Court stated:

> [T]o establish a "change of circumstances," a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed. Again, not just any change will suffice, for over time there will always be some changes in a child's environment, behavior, and well-being. Instead, the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors. [*Id*. at 513-514.]

The trial court noted that "the current order is joint legal and joint physical custody" but that there was a "subsequent order" that limited Bethel's "visitation and add[ed] some conditions." It further noted that it appeared that Bethel had "satisfied to some extent" those conditions "but perhaps not to the full extent." The trial court stated that "since that hearing, frankly, I'm not sure that there has been a change in circumstances." It then stated that, "[r]egardless," it would address the best-interest factors. After doing so, it denied Angela's request to change custody.

The trial court failed to follow the proper framework for analyzing a motion for change of custody. The trial court was first required to determine whether there was a change of circumstances or proper cause to revisit the custody decision. See *Griffin*, 323 Mich App at 118-119; *Shann*, 293 Mich App at 305; *Corporan*, 282 Mich App at 603. All it stated in this regard was it was "not sure that there has been a change in circumstances." Beyond this statement, the court did not delve further into what constituted a change of circumstances. Its decision was also devoid of any reference to proper cause that warranted revisiting the custody decision. This threshold—whether there exists a change in circumstances or proper cause to revisit the custody decision—*must* be satisfied before proceeding to analyze any other aspect of the request to change custody. See *Griffin*, 323 Mich App at 118-119. Because the trial court did not first decide whether there existed a change in circumstances or proper cause to revisit the custody decision, the trial court erred in proceeding to further address respondent's request to change custody.

On remand, the trial court should take care to follow the proper framework for deciding such a request. See *Griffin*, 323 Mich App at 118-120. Specifically, the trial court should first address and adequately explain whether there is a change of circumstances or proper cause to revisit the custody decision. If it finds that there is no such change or cause, its inquiry must end

-4-

there. If, however, it finds that there was a change of circumstances or proper cause to revisit the custody decision, it must then address the existence of an established custodial environment. See MCL 722.27(1)(c) ("The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort."). If the trial court again finds that there was an established custodial environment,[1] it may then consider whether there is clear and convincing evidence that a change of custody is in the children's best interests. See *Griffin*, 323 Mich App at 119. If it concludes, however, that there was no established custodial environment, the court may change custody if it finds, by a preponderance of the evidence, that the change would be in the children's best interests. See *id*.

Although we decline to address the court's analysis of the best-interest factors at present in light of the trial court's failure to properly follow the framework for analyzing a request for change of custody, we are mindful of Angela's contention that the trial court improperly relied on facts about Rettelle that were not in evidence. We agree that some of the trial court's statements about Rettelle are concerning. The fact that the court may have had experience with Rettelle outside the context of the instant judicial proceeding should not have factored into, or influenced, its decision regarding Angela's motion to change custody. See *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996) (indicating that it must be shown that a trial judge has an actual bias that was personal and extrajudicial in nature, meaning the bias had its origins in events or sources outside the judicial proceeding).[2] To be sure, there may be valid concerns about Rettelle's past. But when evaluating whether that past justifies denying Angela's request for a change of custody, the court must rely solely on facts and evidence in the record.[3]

## III. CHANGE OF DOMICILE

Angela argues that the trial court abused its discretion by denying her motion to change domicile. Because the trial court made several clear legal errors by improperly considering,

---

[1] The trial court's explanation for its conclusion that the established custodial environment was with Angela was brief: "[T]here is clearly [an] established custodial relationship with the mother." On remand, if the trial court reaches this point, it should more adequately explain its conclusions regarding the established custodial environment, including whether there existed such an environment with Bethel also. See *Ritterhaus v Ritterhaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007) ("[A] custodial environment can be established in more than one home.").

[2] There are "objective and reasonable perceptions" that the trial judge may have either "a serious risk of actual bias impacting the due process rights of a party" or "failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct." MCR 2.003(C)(1)(b). To be safe, on remand, the trial judge should address the issue of disqualification.

[3] Had the court wished to take judicial notice of Rettelle's criminal record or other facts related to him, it should have informed the parties and given them the opportunity to object. See MRE 201.

interpreting, and applying the *D'Onofrio*[4] factors, we vacate this order and remand for additional fact-finding.

## A. STANDARDS OF REVIEW

The trial court's decision on a motion for a change of domicile is reviewed for abuse of discretion. *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013). "An abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Id*. (quotation marks and citations omitted).

## B. LAW AND ANALYSIS

This Court has explained the required process for deciding a motion for a change of domicile:

> A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Rains*, 301 Mich App at 325.]

The trial court found that the factors enumerated in MCL 722.31, also known as the *D'Onofrio* factors, did not support Angela's motion. MCL 722.31(4) provides in relevant part:

> Before permitting a legal residence change [of more than 100 miles] the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:
>
> (a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.
>
> (b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether

---

[4] *D'Onofrio v D'Onofrio*, 144 NJ Super 200; 365 A2d 27 (1976).

the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

"[T]he statutory language requiring a court to 'consider' the factors under MCL 722.31(4) . . . does not require the court to specifically delineate its findings with regard to each factor . . . ." *Yachcik v Yachcik*, 319 Mich App 24, 37; 900 NW2d 113 (2017). Rather, the court is required "to carefully think about, take into account, or assess each factor, but there is no indication that a trial court is required to take further action, such as making explicit findings on the record." *Id*.

## 1. FACTOR (A)

The trial court made a clear legal error because it failed to consider the impact that the move would have on Angela's quality of life.

The trial court was not persuaded by the evidence that Angela's proposed move would have the capacity to improve the general quality of life for Angela and her children. It stated that it "[p]otentially . . . could be the case" but it did not believe "adequate evidence" was presented on this issue. It indicated there was not yet a "full-fledged job offer" and it was conditioned on Angela being qualified as a nurse, a condition that "ha[d] not yet been met." The trial court also found that the job offer "seem[ed] too far vague [sic: far too vague]," and that if there actually was a "strict fixed offer" with information about salary and benefits, it would be "easy to get that in writing to present to the court. And it wasn't." The trial court also "question[ed]" the "prospects" of Angela obtaining a "horse farm and hundreds of acres" of land. The trial court was not "satisfied that [the move to Montana] will improve the quality of life for the children."

MCL 722.31(4)(a), however, requires consideration of the likely capacity for the proposed move to improve the quality of life for both the child *and* the relocating parent. Although, under *Yachcik*, the trial court was not necessarily required to specifically articulate its findings under each factor, it still must carefully assess each factor. See *Yachcik*, 319 Mich App at 37. The court had to determine whether the proposed move had the potential to improve the quality of life for Angela *and* her children. The court acknowledged that the move could "[p]otentially" improve the children's quality of life, and expressed doubts regarding the likely capacity for that improvement.

The trial court's analysis was deficient, however, because it failed to consider whether the move would improve Angela's quality of life. Under MCL 722.31(4)(a), trial courts must consider the potential for improvement in the quality of life for the children *and* the relocating parent. In addition to testifying about her new job offer and the horse farm, Angela also testified that the climate in Montana would slow the progression of her MS compared to the climate in Michigan.[5] She also testified that in Montana she would have the opportunity to do guided hunting and fishing trips. The trial court's findings on this factor only addressed Angela's testimony about her potential job and new home, but did not touch on other testimony related to additional benefits to the proposed move.

We defer to the trial court on issues of credibility, *Brown v Brown*, 332 Mich App 1, 9; 955 NW2d 515 (2020), and many of its findings were based on credibility. The trial court, nonetheless, clearly erred when it focused solely on an improvement to the lives of the children, rather than also addressing whether the proposed move had the capacity to improve Angela's life. On remand, the court shall consider the evidence discussed above, and it shall then determine whether it is so skeptical of Angela's testimony that there is not a likely capacity for improvement in the quality of life of the children and relocating parent.

## 2. FACTOR (B)

Regarding MCL 722.31(4)(b), the trial court's analysis was erroneous because it failed to make findings pertaining to the parties' compliance with and utilization of the governing parenting time order, and because it erroneously considered Bethel's motivation for opposing Angela's motion.

The first half of this factor requires a trial court to analyze whether the parties have complied with the parenting time order and whether the parties have utilized their parenting time. See MCL 722.31(4)(b). There is no indication that the trial court considered this aspect of the second *D'Onofrio* factor. This omission is significant. The evidence suggested that this portion of the factor may have weighed in favor of the move because Bethel had not exercised any of his parenting time since April 2021—more than a year before the motion hearing. The second half of this factor required the court to consider whether the party seeking relocation (Angela) was motivated by a desire to frustrate the parenting schedule. See *id*. The court found that Angela's desire to relocate was driven by "genuine" motives. The court, however, then discussed Bethel's motivation for opposing the relocation. Upon concluding that his motives were likewise "genuine," the court essentially concluded that this canceled out any weight that could have been accorded to Angela. This was not the correct analytical framework. Under MCL 722.31(4)(b), the trial court should have considered the motive of the relocating parent only. Bethel's motivation for opposing the move was irrelevant to this factor.

On remand, the court shall make findings pertaining to the parties' compliance with and utilization of the current order governing parenting time. Additionally, to determine whether

---

[5] We do not take a position on whether this claim is medically accurate. In this case, the claim was not supported by any evidence other than Angela's own testimony.

Angela's desire to move is motivated by the opportunity to frustrate the current parenting time schedule, the court shall consider Angela's motives only.

### 3. FACTOR (C)

Regarding MCL 722.31(4)(c), the trial court's analysis was erroneous because it failed to address whether it was possible to construct a parenting time schedule which would preserve Bethel's relationship with his children. It also erred because it failed to consider this issue in the context of Bethel's failure to make any effort to cultivate a relationship with his children, or whether the parties were likely to comply with a modified schedule.

The trial court explained its findings under this factor as follows:

> Next, court [sic] must be satisfied that there be a realistic opportunity for visitation in lieu of weekly parent pattern [sic] which may provide an adequate basis for preserving and fostering a parental relationship. Well, Montana is a far, far long way away. I haven't really been provided with a proposed parenting time schedule that would, that would satisfy reasonable parenting time. It hasn't been presented in the, in the plan. So, I've considered that factor. I am, at this time denying the move.

There are three problems with the court's findings under this factor. First, the court stated that it "must be satisfied that there be a realistic opportunity for visitation . . . ." This was not an accurate statement of the law; rather, the court needed to assess whether the parenting time order could be modified in such a way that the relationship between Bethel and his children could be preserved. MCL 722.31(4)(c). The proper inquiry focuses on whether there would be "a realistic opportunity to preserve and foster the parental relationship previously enjoyed by the nonrelocating parent." *McKimmy v Melling*, 291 Mich App 577, 584; 805 NW2d 615 (2011) (quotation marks and citation omitted). Instead of doing this, the court simply observed that Montana is far away and that Angela did not propose a parenting time schedule "that would satisfy reasonable parenting time."

Second, the court failed to acknowledge crucial context concerning Bethel's relationship with the children: he had not seen them in more than a year. The fact that Montana is far away from Michigan may not be as critically important when it comes to preserving a relationship that already involves no physical visitation. This Court has recognized that "[t]he separation between a parent and a child can be diminished by the use of modern communication technology." *McKimmy*, 291 Mich App at 583 (quotation marks and citation omitted). Given Bethel's failure to exercise his parenting time for the 13 months preceding the hearing, modern communication technology might preserve or possibly improve Bethel's relationship with the children. Moreover, Angela testified that she would be willing to pay for a portion of her children's flights to Michigan so they could visit Bethel, which the court failed to acknowledge.

Finally, this factor also required the court to consider whether the parties would comply with any potential modifications. The court did not consider this at all. There was evidence suggesting that if either party would not comply, it was Bethel. Not only did he chronically fail to

exercise parenting time, he also admittedly disobeyed court orders pertaining to counseling and parenting classes.

On remand, the court shall reassess this factor by determining the possibility of constructing a parenting schedule that would allow Bethel to preserve his relationship with his children. The court shall also consider the likelihood of each party complying with a modified parenting time schedule.

### 4. FACTORS (D) AND (E)

The court did not make any findings pertaining to factors (d) or (e). Although the court was not obligated to make explicit findings for each factor, it was required "to carefully think about, take into account, or assess each factor." *Yachcik*, 319 Mich App at 37. There is nothing in the record suggesting that the court in any way considered these factors.[6] Although it may, but need not, make explicit findings for these factors, on remand, the court should indicate, at a minimum, that it considered these factors as required. See *id*.

### IV. CONCLUSION

We vacate the trial court's order denying Angela's requests for sole legal custody and for a change of domicile, and remand to the trial court for additional proceedings consistent with this opinion. We retain jurisdiction in order to facilitate appellate review of the proceedings on remand.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly

---

[6] The trial court considered domestic violence in the context of Angela's motion to change custody, finding that the situation with Rettelle warranted that factor favoring Bethel. To the extent the trial court also relied on these findings for its findings regarding domestic violence related to the request for change of domicile, it should have articulated this, otherwise there is no indication that it considered domestic violence in relation to the request to change domicile.

-10-

# Court of Appeals, State of Michigan

## ORDER

Noah P. Hood
Presiding Judge

Angela Young v Bethel Young

Docket No. 362014

Kathleen Jansen

LC No. 19-014088-DM

Kirsten Frank Kelly
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, (1) we vacate the order denying the motion for legal custody, and remand this case for the trial court to address the threshold issue of wether proper cause or a change in circumstances exists to allow the court to revisit the issue of legal custody, and (2) we vacate the order denying the motion for change of domicile, and femand this case fir further findings reardibg the factors enumerated in MCL 722.31. On remand the court should address the potential disqualification or disclosure issues identified in the opinion. The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 22, 2022
Date

Chief Clerk