*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BCM,

        Plaintiff-Appellant,

v

DRH,

        Defendant-Appellee.

UNPUBLISHED
March 14, 2024

No. 367454
Lenawee Circuit Court
Family Division
LC No. 2022-049117-DM

Before: O'BRIEN, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right the judgment of divorce awarding, in relevant part, joint legal custody of the parties' minor child, WLH. In its decision, the trial court did not explain whether the award of physical custody would modify the child's established custodial environment and did not identify the burden of proof it applied when determining the custody award. We therefore vacate the judgment of divorce to the extent that it awarded the parties joint legal custody of WLH and remand to the trial court for further proceedings on the issue of legal custody.

## I. BACKGROUND

This case concerns an award of joint legal custody in a divorce proceeding. The parties began dating in 2019. WLH was born in December 2020 and the parties married almost a year later in September 2021 in Houston, Texas. Both parties have documented mental-health issues. Defendant's started in 2015 and include depression, anxiety, post-traumatic stress disorder, and, although disputed, bipolar disorder. Plaintiff has obsessive compulsive disorder and suffered from postpartum depression for about a year after WLH's birth. After their marriage, the parties moved to Michigan with WLH.

The parties separated in mid-December 2021 after an alleged domestic-violence incident. The parties were arguing and, according to plaintiff, defendant threw a bell pepper at her and told her, " 'Don't forget to kill yourself.' " He also threw a small, wooden toy at or near plaintiff, and threw a pillow at her while she was holding WLH. Defendant was arrested and prosecuted for domestic violence, MCL 750.81(2). He pleaded not guilty and was released on bond conditions

that included no contact with plaintiff. Sometime after defendant's arrest, plaintiff asked for a modification to the bond conditions so defendant could see WLH. Plaintiff also obtained a personal protection order (PPO) against defendant in January 2022. At some point around February 2022, she asked to modify the PPO to allow the parties to communicate about WLH, and in April or May 2022, the prosecution moved to dismiss the domestic-violence charge at plaintiff's request.

In January 2022, plaintiff filed for divorce. Relevant here, plaintiff requested sole legal and physical custody of WLH, as well as child support and retention of the marital home. The same day she filed for divorce, plaintiff also moved for entry of an ex parte order for interim sole legal and physical custody of WLH based on the December 2021 domestic-violence incident. Though plaintiff had concerns about defendant and the home environment he could provide, she "value[d] the father-son relationship," so she was willing to agree to a parenting-time schedule for defendant of two hours of unsupervised parenting time each week.

The day after she requested it in her motion, the trial court awarded plaintiff sole legal and physical custody of WLH on an interim basis. The court also granted defendant parenting times at times agreed to by the parties, or, if the parties could not agree, for two hours on Saturdays. This interim order continued for the 15-month life of the case. In late April 2022, the parties stipulated to more parenting time for defendant, changing the parenting-time schedule to give him six hours of parenting time with WLH on Sundays.

In late May 2022, however, WLH ingested and choked on his own fecal matter during defendant's unsupervised parenting time. Shortly after exchanging WLH, plaintiff saw numerous missed calls and text messages from defendant indicating that WLH was "choking," and that defendant had called 911. WLH was apparently "fine" (defendant had "pounded" on WLH's back and dislodged the feces), but the responding emergency personnel wanted to take defendant to the hospital instead of WLH because defendant was behaving erratically. Defendant asked plaintiff to take WLH because he " 'can't handle anything,' " noting also that he was not taking his medication. Plaintiff took WLH to the hospital and he was later discharged once doctors determined he was "normal." Based on these events, plaintiff requested supervised parenting time for defendant, and asked the court to order parenting classes for defendant and require him to take all of his prescribed medications.

In late May 2022, the trial court entered an ex parte order for supervised parenting time of two hours per week for defendant and requiring him to take all prescribed medications. Defendant objected to the supervised parenting-time order. In late June 2022, the court held a hearing on plaintiff's motion for supervised parenting time. Plaintiff's attorney revealed that defendant had not attended any supervised parenting time in over a month, and the court decided to hold an evidentiary hearing on the issue. At the late July 2022 evidentiary hearing, the parties informed the court that they had resolved their dispute over the temporary parenting-time schedule. They agreed defendant would receive two, three-hour sessions of unsupervised parenting time each week, provided he offered proof of enrollment in parenting classes. The court order memorialized these conditions in an order, and ordered defendant to comply with his mental-health treatment plan and send the plan to plaintiff. It further ordered the parties to attend mediation before the divorce trial to try to resolve their issues.

The parties were unable to resolve their disputes regarding custody, child support, property and marital debt division, and spousal support before trial. The trial occurred over the course of three days in late 2022 and early 2023. Plaintiff, defendant, and defendant's mother were the only three witnesses who testified at trial. Their testimony covered topics like the parties' living arrangements, their work history, their mental-health conditions, and their communication regarding WLH. It also included the incidents of domestic violence during the parties' relationship (including the December 2021 incident), the fecal-matter incident, and defendant's parenting-time compliance. The parties also mutually agreed that they could not communicate effectively about WLH. In her trial brief and at trial, plaintiff advocated, in relevant part, for sole legal and physical custody, noting that she had been WLH's sole caregiver since his birth and that defendant had a sporadic presence in the child's life. For example, she noted he inconsistently exercised parenting time and did not hold stable employment. At trial, defendant argued for joint legal custody and a gradual expansion of his parenting time that would ultimately lead to joint physical custody.

The trial court found the jurisdictional requirements for the divorce were met and that there had been a breakdown in the marital relationship. In addressing custody, the trial court found there was an established custodial environment with only plaintiff. The court—without determining whether the proposed change to custody would change the established custodial environment with plaintiff—then immediately began discussing the best interest factors. After making its best-interest findings, the court awarded the parties joint legal custody and plaintiff primary physical custody:

> So, I used to be able to, I don't think I can do it anymore because I think there's some case law change, orders to go [sic] custody only for purposes of medical decisions, day-to-day stuff, but, some case law came down. I don't think I can do that. So, what I am going to do is order joint legal custody because nothing – there's not been any testimony here that would give me reason not to grant joint legal custody. She loves [WLH]. You love [WLH]. I think, you know, he wants to be an involved parent, and I think he wants to make his life better, at least what I'm getting from the testimony. I am going to grant primary physical custody to [plaintiff].

The court also ordered parenting time for defendant for six hours on Wednesdays and eight hours on Sundays. After 60 days, defendant would also receive parenting time on every other Saturday. After 90 days, defendant's parenting time would expand to six hours every Wednesday and alternating weekends. The court gave plaintiff the ability to withhold parenting time if she believed defendant was having mental-health issues.

The trial court entered the judgment of divorce in early August 2023. In relevant part, the judgment of divorce mirrored the trial court's ruling by awarding the parties joint legal custody of WLH and awarding plaintiff primary physical custody. It also ordered the parties to communicate about major issues relating to WLH's health, education, and welfare, and it outlined a three-phase gradual parenting-time increase for defendant. This appeal followed, with plaintiff challenging only the trial court's award of joint legal custody.

## II. STANDARD OF REVIEW

We employ three standards of review in child-custody matters. *Barretta v Zhitkov*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 364921 and 365078); slip op at 5.

> [*First*,] [t]he great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. . . . A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. [*Second*,] [a]n abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. [*Third*,] [q]uestions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. [*Id*. at ___; slip op at 5 (quotation marks and citation omitted).]

The appropriate burden of proof is a question of law that we review de novo. *Griffin v Griffin*, 323 Mich App 110, 118; 916 NW2d 292 (2018), as amended.

### III. CHANGE IN ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff argues that the trial court committed clear legal error by failing to apply a clear and convincing evidence burden of proof when deciding whether joint legal custody was in WLH's best interests. We conclude that the trial court clearly erred, but for a slightly different reason. The trial court clearly erred when it failed to determine whether awarding the parties joint legal custody would change WLH's established custodial environment with plaintiff. This was a threshold question that determined the appropriate burden of proof. The trial court's failure to state the standard it applied compounded this error.

Child-custody matters are governed by the Child Custody Act (CCA), MCL 722.21 *et seq*., which is "the exclusive means of pursuing child custody rights." *Barretta*, ___ Mich App at ___; slip op at 6 (quotation marks and citation omitted). Because the CCA is equitable in nature, it must be liberally construed and applied to allow for prompt determination of the rights of the child, as well as the rights and duties of the parties. *Id*. at ___; slip op at 6. The overarching purpose of the statute is to promote the best interests of the child. *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362488); slip op at 16. Thus, the CCA lays out specific procedures for the trial court to follow and factual findings that the court must make before modifying a child's established custodial environment. *Id*. at ___; slip op at 15-16, citing MCL 722.27(1)(c).

This appeal involves the issue of legal custody. "The Legislature divided the concept of custody into two categories—custody in the sense of the child residing with a parent and custody in the sense of a parent having decision-making authority regarding the welfare of the child." *Barretta*, ___ Mich App at ___; slip op at 7 (brackets, quotation marks, and citation omitted). Physical custody relates to where the child will reside physically, and legal custody relates to the authority to make important decisions regarding the welfare of the child. *Id*. at ___; slip op at 7.

The CCA defines joint legal custody as a circumstance where "the parents shall share decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b). When a child resides with a parent, however, that parent retains the ability to decide routine matters regarding the child. MCL 722.26a(4). The legal standards for changing custody apply in the same manner for both legal and physical custody. *Kuebler*, ___ Mich App at ___; slip op at 16.

> On the issue of custody, MCL 722.27 provides, in relevant part:

> > (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

> > * * *

> > (c) Subject to subsection (3), modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age and, subject to section 5b of the support and parenting time enforcement act, . . . MCL 552.605b, until the child reaches 19 years and 6 months of age. The court shall not modify or amend its previous judgments or orders *or issue a new order* so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c) (emphasis added).]

In other words, whether a court is modifying a prior order or issuing a new order, it must consider whether the proposed change would modify an established custodial environment and whether that modification is in the best interest of the child. See *id*.

> This case is somewhat unusual because it presents a challenge to the trial court's original custody order. In general, when one party seeks to modify an existing custody or parenting-time order, the movant must establish proper cause or change of circumstances before the court may review the custody order. See *Merecki v Merecki*, 336 Mich App 639, 645-646; 971 NW2d 659 (2021). But here, the judgment of divorce contained an original custody award. Although the trial court entered an interim order at the outset of the case that granted plaintiff sole legal and physical custody of WLH, this Court has held that interim orders are not original custody awards for purposes of MCL 722.27(1)(c) when those orders are not the product of an evidentiary hearing and a best-interest finding on the record. See *Thompson v Thompson*, 261 Mich App 353, 358-359; 683 NW2d 250 (2004). The trial court issued the interim order on an ex parte basis at the outset of the case, and the order was not the product of an evidentiary hearing or a best-interest finding. Thus, defendant did not have to establish proper cause or a change in circumstances

warranting joint legal custody because he did not request a modification of an existing custody award.

Defendant, however, had to establish, and the trial court still had to determine, whether it was in WLH's best interests for the court to change legal custody from plaintiff's sole legal custody to joint legal custody. In *Thompson*, 261 Mich App at 354, the parties had stipulated at the outset of the divorce matter that the plaintiff (the father of the parties' children) would have temporary physical custody of the children. The defendant later moved to change the stipulated, temporary custody order, and the trial court denied the motion. *Id*. at 354-355. Custody was the only issue at trial. *Id*. at 355. The trial court determined that an established custodial environment existed with the plaintiff, leaving the defendant to prove, by clear and convincing evidence, that a change in custody was in the children's best interests. *Id*. The trial court considered the best-interest factors and determined that the defendant had established that a custody change was in the children's best interests. *Id*. The court awarded the defendant physical custody of the children during the school year and awarded the plaintiff physical custody during the summer. *Id*.

On appeal, this Court rejected the plaintiff's argument that the defendant was required to demonstrate proper cause or change in circumstances. *Id*. at 358. This Court held that the custody award resulting from the trial was the original custody award. *Id*. Although the trial court had entered the stipulated custody order at the outset of the case, it held no evidentiary hearing on the best-interest factors until the trial. *Id*. at 359 and n 1. The Court reasoned, "It is improper to decide the issue of custody on the pleadings alone when no evidentiary hearing is held." *Id*. The *Thompson* Court explained, however, that the remaining provisions in MCL 722.27(1)(c) apply to "new" custody orders, as well as previous judgments. *Id*. at 361-362. And, this Court held, when the trial court finds that an established custodial environment exists, the moving party retains the burden to demonstrate, by clear and convincing evidence, that a change in the established custodial environment in an original custody order is in the child's best interests. *Id*.

Here, the trial court concluded that an established custodial environment existed only with plaintiff. An established custodial environment includes "both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence." *Kuebler*, ___ Mich App at ___; slip op at 17 (quotation marks and citation omitted). Plaintiff does not challenge that ruling (which favors her).

After the court determines that an established custodial environment exists, the court must then determine whether the proposed change would modify the established custodial environment, examining the issue from the child's point of view. See MCL 722.27(1)(c). See also *Pierron v Pierron*, 486 Mich 81, 92; 782 NW2d 480 (2010). A change to the established custodial environment occurs if the change would alter which parent the child naturally looks to "for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). If an established custodial environment does not exist, or if there is no change to the established custodial environment, "the trial court may change custody if it finds, by a preponderance of the evidence, that the change would be in the child's best interests." *Kuebler*, ___ Mich App at ___; slip op at 17 (quotation marks and citation omitted). See also *Pierron*, 486 Mich at 89-90, 92 (applying the preponderance of the evidence standard in a case where there was no change to the established custodial environment). When an established custodial environment exists, however, "a court is not to change the established custodial environment of a child unless there is presented

clear and convincing evidence that it is in the best interest of the child." *Kuebler*, ___ Mich App at ___; slip op at 17 (quotation marks and citation omitted). For example, changes to legal custody, along with significant changes to parenting time, may change the child's established custodial environment. See *id*. at ___; slip op at 22.

The trial court never made the threshold determination of whether modifying legal custody, along with the gradual expansion of defendant's parenting time, would change the established custodial environment with plaintiff. See MCL 722.27(1)(c). The record is not well-developed on this issue. The court went from finding that an established custodial environment existed with only plaintiff to evaluating the best-interest factors. It did not state whether the proposed change would modify that environment. And it did not state the applicable burden of proof. The trial court's failure to make this finding precludes appellate review of the appropriate burden of proof. This was a clear legal error.

We also note that the trial court employed the wrong analysis regardless of which burden of proof applies. The court's statement that "there's not been any testimony here that would give me reason not to grant joint legal custody" suggests that it viewed joint legal custody as a default option or as a rebuttable presumption. This is not the proper legal framework. See *Kuebler*, ___ Mich App at ___; slip op at 17. The court had to determine that the change in legal custody was in WLH's best interests. *Id*. The court therefore erred when it stated there was no testimony that would give it reason *not* to grant joint legal custody.

In sum, the trial court erred when it failed to address whether the change to legal custody would modify the established custodial environment with plaintiff and did not identify the burden of proof it applied in determining its custody award. We therefore vacate the trial court's order and remand with instructions for the trial court to conduct a child custody hearing. The court must make the initial determination of whether joint legal custody will change the established custodial environment before deciding whether joint legal custody is in WLH's best interests. If the court determines that a joint legal-custody award would change the established custodial environment, then the court may award joint legal custody only if it finds by clear and convincing evidence that it is in WLH's best interests to do so. *Kuebler*, ___ Mich App at ___; slip op at 17  On remand, the court shall consider up-to-date information. See *Griffin*, 323 Mich App at 128.[1]

We vacate the judgment of divorce to the extent it awarded the parties joint legal custody and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[1] Because we conclude that remand is required for the trial court to make necessary factual findings on the applicable burden of proof, we do not address plaintiff's alternative argument regarding the trial court's analysis of the best-interest factors. We note, however, that the trial court did not make factual findings to support its ruling on several best-interest factors. Additionally, on remand, the court shall consider whether the parties will be able to cooperate with one another and agree generally about the important decisions affecting the welfare of the child. See *Kuebler*, ___ Mich App at ___; slip op at 17; MCL 722.26a(1)(b).

/s/Colleen A. O'Brien
/s/ Stephen L. Borrello
/s/ Noah P. Hood