*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEVLIN SCHMIDT,

        Plaintiff-Appellee,

v

ASHLEY UGOLINI,

        Defendant-Appellant.

UNPUBLISHED
June 27, 2024

No. 368319
Bay Circuit Court
Family Division
LC No. 19-007472-DM

Before: O'BRIEN, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order granting plaintiff's motion to change parenting time and school for the parties' child, LMS. Defendant argues that the trial court wrongly concluded that the change to defendant's parenting time would not modify LMS's established custodial environment with defendant, and consequently applied the wrong standard of proof to its best-interest determination. Defendant further argues that three of the trial court's findings for the best-interest factors were against the great weight of the evidence or involved clear legal error. We agree with defendant that the trial court applied the wrong standard of proof to its best-interest determination, and that the court legally erred in its assessment of one of the best-interest factors. We accordingly vacate the trial court's order and remand for further proceedings.

## I. BACKGROUND

The parties divorced in September 2020 and shared joint legal and joint physical custody of LMS. Their consent judgment of divorce gave the parties equal parenting time with LMS through a week on/week off schedule. Following the divorce, plaintiff continued living in the marital home in Bay City, while defendant moved to Livonia. LMS attended preschool during both parents' parenting time, attending a different school depending on which parent she was with.

---

[1] *Schmidt v Ugolini*, unpublished order of the Court of Appeals, entered February 13, 2024 (Docket No. 368319).

When it came time for LMS to enroll in kindergarten, this arrangement could no longer work, and the parties needed to decide on a single school for LMS to attend. After the parties were unable to agree where LMS would attend kindergarten, plaintiff filed a motion in January 2023 requesting that LMS attend Bay City Public Schools and that defendant's parenting time be modified accordingly. Defendant opposed the motion and requested that LMS attend Plymouth-Canton Public Schools.

The trial court referred the motion to the Friend of the Court (FOC). The FOC recommended that LMS be enrolled in Bay City Public Schools and that defendant's parenting time be limited to primarily weekends and the summer months.

Defendant objected to the FOC's recommendation, and the trial court held an evidentiary hearing. Following that hearing, the trial court granted plaintiff's motion and adopted the FOC's recommendation. In its order, the trial court recognized that the parties shared joint custody of LMS and that LMS had an established custodial environment with both parents, but said, "Regardless of the school chosen by the Court, the established custodial environment would not be altered, that remains with both parents." Based on this finding, the court applied a preponderance-of-the-evidence standard to its best-interest determination. Addressing the best-interest factors, the court said that it only needed to "consider the best-interest factors relevant to the issue" of school enrollment, and accordingly limited its best-interest analysis to factors (a), (b), (d), (e), (g), (h), and (j). The court found that factors (d), (e), and (j) favored plaintiff and that the other applicable factors favored neither party. Based on its review of the best-interest factors, the court found by a preponderance of the evidence that enrolling LMS in Bay City Public Schools was in her best interests. The court adopted the parenting-time schedule recommended by the FOC.

This appeal followed.

## II. STANDARD OF REVIEW

MCL 722.28 provides that when reviewing a lower court order in a custody dispute, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." This statute distinguishes among three types of rulings "and assigns standards of review to each." *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011) (quotation marks and citation omitted). The first type is factual findings, which "are reviewed under the 'great weight of the evidence' standard." *Id.* "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). The second type is questions of law, which are reviewed for clear legal error. *Id.* "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id.* (quotation marks and citation omitted). The third type is discretionary rulings, which are reviewed for a palpable abuse of discretion. *Dailey*, 291 Mich App at 664. "An abuse of discretion exists when the trial court's decision is palpably and grossly violative of fact and logic." *Id.* at 664-665 (quotation marks, citations, and alteration omitted).

## III.  ESTABLISHED CUSTODIAL ENVIRONMENT

On appeal, defendant first argues that the trial court erred when it found that granting plaintiff's request to enroll LMS in Bay City Public Schools and adjust defendant's parenting time would not alter LMS's established custodial environment with defendant, which led the court to apply the wrong standard to its best-interest determination.

In circumstances analogous to this case, our Supreme Court in *Pierron v Pierron*, 486 Mich 81, 85-86; 782 NW2d 480 (2010), explained how analyzing a request to change a child's school can vary depending on how the change will affect the child's established custodial environment:

> The Child Custody Act "applies to all circuit court child custody disputes and actions, whether original or incidental to other actions."  MCL 722.26(1).  The act provides that when parents share joint legal custody—as the parties do here— "the parents shall share decision-making authority as to the important decisions affecting the welfare of the child."  MCL 722.26a(7)(b).  However, when the parents cannot agree on an important decision, such as a change of the child's school, the court is responsible for resolving the issue in the best interests of the child.  *Lombardo v Lombardo*, 202 Mich App 151, 159; 507 NW2d 788 (1993); see also MCL 722.25(1).  When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment.   The established custodial environment is the environment in which "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort."  MCL 722.27(1)(c).  While an important decision affecting the welfare of the child may well require adjustments in the parenting time schedules, this does not necessarily mean that the established custodial environment will have been modified.  *Brown v Loveman*, 260 Mich App 576, 595-596; 680 NW2d 432 (2004).  If the required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed.  See *id*.  The court may not " 'change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.' "  *Id*. at 585, quoting MCL 722.27(1)(c). [Footnotes omitted.]

The parties first dispute the standard of review applicable to defendant's appellate argument.[2]  Defendant contends that this Court should review her argument on appeal for clear

---

[2] Technically, plaintiff first disputes whether this Court should address defendant's established-custodial-environment argument at all.  According to plaintiff, this issue is unpreserved and therefore waived.  We disagree.  Even if defendant did not sufficiently raise this issue in the trial court (which is debatable), that would not render it unpreserved.  To properly address plaintiff's motion to enroll LMS in Bay City Public Schools and adjust defendant's parenting time, the trial court had to decide whether granting the motion would alter LMS's established custodial

legal error because the lower court erred by not treating plaintiff's motion to change schools and parenting time as a motion to change custody. Plaintiff counters that the lower court's finding that the change in LMS's school would not alter LMS's custodial environment is a factual finding reviewed under the great-weight-of-the-evidence standard. We agree with plaintiff. Defendant is arguing that the trial court erred when it found that its order would not alter LMS's established custodial environment with defendant. Whether a proposed change of schools would alter a child's established custodial environment is a factual determination reviewed under the great-weight-of-the-evidence standard.[3] See, e.g., *Pierron*, 486 Mich at 89 ("Therefore, we agree with the Court of Appeals that the trial court's determination that the proposed change of schools would alter the established custodial environment was against the great weight of the evidence.").

Still, we agree with defendant that the trial court's finding that its decision would not alter LMS's established custodial environment with defendant was against the great weight of the evidence. Neither party disputes the trial court's finding that an established custodial environment existed with both parties before the court entered the contested order. See *Foskett v Foskett*, 247 Mich App 1, 8; 634 NW2d 363 (2001) (explaining that an established custodial environment can exist with both parents). Indeed, to argue against this finding would be futile—LMS plainly had an established custodial environment with both parents because she split her time evenly between the two households.

After finding that LMS had an established custodial environment with both parties, the court found that "[r]egardless of the school chosen by the Court, the established custodial environment would not be altered, that remains with both parents." That is, the court found that its ordering LMS to attend school in Bay City and the attendant adjustments to the parenting-time schedule would not alter LMS's established custodial environments.

It is well-recognized that not every change to a parenting-time schedule will result in a change to the child's established custodial environment. *Marik v Marik*, 325 Mich App 353, 361; 925 NW2d 885 (2018); *Pierron*, 486 Mich at 86. It is equally well-recognized that significant modifications to a party's parenting time can alter the child's established custodial environment with that parent. *Lieberman v Orr*, 319 Mich App 68, 89-90; 900 NW2d 130 (2017); *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013); *Powery v Wells*, 278 Mich App 526, 528;

---

environment with either parent. The court decided that it would not, and "[n]o exception need be taken to a finding or decision" to preserve it for review. MCR 2.517. Accord *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005).

[3] We do not read the trial court's order as separately addressing (1) whether it was in LMS's best interests to attend Bay City Public Schools and (2) whether it was in LMS's best interests to adopt the FOC's recommended parenting-time schedule and adjust defendant's parenting time accordingly. Rather, the court addressed the issues together—it performed a single best-interest analysis, then ordered both that LMS attend Bay City Public Schools and that the FOC's recommended parenting-time schedule be adopted. Given that the trial court performed one best-interest analysis, we assume that the court considered the adjustment to one parent's parenting time to be part and parcel of the court's deciding where LMS should be enrolled in school.

752 NW2d 47 (2008). A typical example of when a change to one party's parenting time can alter the child's established custodial environment is when "a parent who previously had equal parenting time" is relegated "to a 'weekend parent.' " *Stoudemire v Thomas*, 344 Mich App 34, 45; 999 NW2d 43 (2022) (quotation marks and citation omitted). That said, the "critical inquiry" is not how drastic the adjustments to a party's parenting time are but "whether the adjustments will 'change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort.' " *Id.*, quoting *Perron*, 486 Mich at 86 (alteration omitted).

Before the trial court entered its order, the parties had equal parenting time—LMS had roughly 182 overnights per year with both parties. Under the new parenting-time schedule, defendant's overnights were reduced to 123 per year. The court offered no explanation as to why the drastic reduction in LMS's overnights with defendant would not alter LMS's established custodial environment with defendant. Defendant lost almost 60 overnights per year with LMS, which amounted to over 30% of defendant's overnights with her daughter.[4] More than that, defendant's visits changed from a week-on/week-off arrangement to three weekends per month during the approximately nine-month school year, plus an increased block of parenting time in the summer months. In essence, then, defendant went from equal parenting time to being a "weekend-parent" for the majority of the year, and she lost a significant number of overnight visits.

This Court has held that similar changes altered a child's established custodial environment. In *Brown*, 260 Mich App at 596-597,[5] a change from nearly equal parenting time to a schedule that reduced one parent's parenting time to summer only amounted to a change in the child's established custodial environment. In *Powery*, 278 Mich App at 528, this Court held that the proposed parenting-time changes altered the established custodial environment when a parent who previously had equal parenting time was relegated to a "weekend parent." And in *Lieberman*, 319 Mich App at 86-87, this Court held that a reduction in a parent's overnight visits from 225 per year to 140 per year amounted to a change in the child's established custodial environment, and that the trial court's contrary finding was against the great weight of the evidence.

The instant case is similar to *Brown*, *Powery*, and *Lieberman*. The significant loss in defendant's overnight visits makes this case comparable to *Lieberman*. Defendant's parenting time getting shifted from a week-on/week-off schedule to a primarily "weekend parent" role is similar to the circumstances addressed in *Powery*. And the majority of defendant's (reduced) parenting time getting shifted to the summer months parallels the facts of *Brown*. Similar to the Courts in those cases, we believe that shifting defendant's parenting time to primarily the summer months and the drastic reduction in defendant's overnights with LMS during the other roughly nine months of the year will tend to change whether LMS naturally looks to defendant for

---

[4] Defendant states on appeal that the court's "order reflects a 20% reduction" to defendant's overnights, but it is unclear how defendant arrived at this figure.

[5] The decision in *Brown* is not directly analogous because it involved a change of domicile and a resulting change in parenting time, but it is still relevant to the extent that it discusses how significant changes to one party's parenting time can alter an established custodial environment.

guidance, discipline, the necessities of life, and parental comfort, especially considering LMS's young age.

Plaintiff argues that this is not so because the trial court ordered that LMS be "allow[ed] and encourage[d]" to contact defendant "via phone or video chat," and this contact was ordered to "be exercised freely at [LMS's] reasonable request." We reject this argument for three reasons. First, it was not a basis for the trial court's established-custodial-environment finding. The court's entire analysis stated, "Regardless of the school chosen by the Court, the established custodial environment would not be altered, that remains with both parents." Second, considering LMS's young age, see MCL 722.27(1)(c), any contact by phone or video chat would have to go through an intermediary. This in turn would hinder whether LMS would naturally look to defendant for guidance, discipline, the necessities of life, and parental comfort. Lastly, the trial court itself prioritized LMS's physical environment when it concluded that LMS had established custodial environments with both parents—the court's only finding in support of its conclusion that an established custodial environment existed with both parties was that "the parties share an equal parenting time schedule."[6] The court then drastically changed that parenting-time arrangement, but concluded—without considering the extent of the change, LMS's young age, or whether LMS would continue naturally looking to defendant for guidance, discipline, the necessities of life, and parental comfort—that the change would not alter LMS's established custodial environment with defendant. For the reasons explained, when considering the extent of the change, LMS's young age, and whether the change would affect whether LMS would continue naturally looking to defendant for guidance, discipline, the necessities of life, and parental comfort, we believe that the trial court's conclusion was against the great weight of the evidence.

We acknowledge that our Supreme Court recently addressed how a change in parenting time can alter a child's established custodial environment in *Sabatine v Sabatine*, ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 165279). There, our Supreme Court explained that this Court erred when it concluded that the trial court's finding that its ordered change in parenting time would not alter the children's established custodial environment for two reasons, only one of which is relevant here. Pertinently, the Supreme Court faulted this Court for not giving sufficient deference to the trial court. *Id*. at ___; slip op at 12. It explained that the trial court provided a "lengthy analysis, which made up almost three pages of its opinion and order," in which the court explained why its decision would not alter the children's established custodial environment, whereas this Court gave only a cursory explanation without "any meaningful explanation of how the facts clearly preponderated against the trial court's factual findings or how the findings were

---

[6] The court's entire analysis was as follows:

> The Court must first determine the established custodial environment. The Court finds from the proofs presented that an established custodial environment exists with both parents. Specifically, the parties share an equal parenting time schedule; therefore, since the Judgment of Divorce was entered the child has naturally looked to both parents for guidance, discipline, the necessities of life, and parental comfort. The Court also considered the age of the child, the parties' physical environments, and the permanency of the relationship between the child and each parent. MCL 722.27(1)(c).

against the great weight of the evidence." *Id*. at ___; slip op at 12-13. Our Supreme Court also faulted this Court for placing too much emphasis on "mathematical principles" when concluding that the trial court's conclusion was against the great weight of the evidence. *Id*. at ___; slip op at 13. The Court explained:

> In doing so, it treated the established-custodial-environment question as if it were a simple math equation that could be answered by looking at the number of overnights the children spend with each parent. But determining whether an established custodial environment will be modified by a court order or judgment is not that simple. Although the "physical environment" of the children is to be considered in determining a child's established custodial environment, it is not the only factor, and it is not alone dispositive. [*Id*. at ___; slip op at 13.]

This case is readily distinguishable from *Sabatine*. First, unlike the trial court's three-page analysis in *Sabatine*, the court's analysis here was a single sentence. Second, and more importantly, we are not "treat[ing] the established-custodial-environment question as if it were a simple math equation that could be answered by looking at the number of overnights the children spend with each parent." We are instead considering not only the change to LMS's physical environment but also LMS's age and whether the change to defendant's overnights would change whether LMS naturally looks to defendant for guidance, discipline, the necessities of life, and parental comfort. See MCL 722.27(1)(c).

We accordingly hold that the trial court's determination that the proposed school change and accompanying adjustment to defendant's parenting time would not alter LMS's established custodial environment with defendant was against the great weight of the evidence.[7]

This factual error was significant because it led to a cascade of legal errors. First, the error affected plaintiff's burden of proof. If parenting-time adjustments change a child's established custodial environment, then the trial court must find by clear and convincing evidence that the change is in the child's best interests. *Pierron*, 486 Mich at 86. If the established custodial environment does not change, then the party making the request "is required to prove by a preponderance of the evidence that the proposed change of schools would be in the best interests of the children, using the best-interest factors identified in MCL 722.23." *Id*. at 89-90. After finding that its ruling would not alter LMS's established custodial environment, the trial court applied the preponderance-of-the-evidence standard as opposed to the the clear-and-convincing-evidence standard. This was a clear legal error. See *Lieberman*, 319 Mich App at 84; *Pennington*, 329 Mich App at 570.

Second, the trial court's erroneous determination that the proposed school change would not affect LMS's established custodial environment with defendant led the court to improperly consider the best-interest factors. The court correctly recognized that, if the proposed change in schools and parenting time did not affect LMS's established custodial environments, then the court

---

[7] We offer no opinion on defendant's suggestion that, had the trial court granted defendant's motion and accordingly adjusted plaintiff's parenting time, it would not have affected LMS's established custodial environment with plaintiff.

only needed to consider the best-interest factors relevant to the issue before it. See *Pierron*, 486 Mich at 91. But because the court's ordered changes *did* alter LMS's established custodial environment with defendant, the court was required to "consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case." *Id*. at 92-93. The trial court's failure to consider all the best-interest factors was another clear legal error.[8] See *Pennington*, 329 Mich App at 570.

For these reasons, we vacate the appealed order and remand for the trial court to conduct a new best-interest hearing, at which it can apply the correct burden of proof and address all of the best-interest factors.

## IV. BEST-INTEREST FACTORS

Defendant also takes issue with several of the trial court's findings for the best-interest factors. To the extent that defendant challenges the trial court's factual findings related to the best-interest factors, we decline to address the issues in light of our conclusion that the court must conduct a new best-interest hearing. At the new hearing, the court must consider all relevant, up-to-date information, and "it is possible that in light of the up-to-date information, the court might weigh the best-interest factors differently, rendering any review of them now premature." *Griffin v Griffin (Amended Opinion)*, 323 Mich App 110, 124-125 n 10; 916 NW2d 292 (2018). We will, however, address defendant's arguments to the extent that she contends that the trial court committed clear legal errors because those legal issues may recur on remand. See *id*. at 124.

Defendant argues that the trial court committed clear legal error in its assessment of MCL 722.23(d). Factor (d) considers the "length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). "Factor (d) is properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments." *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015). "The plain language of MCL 722.23(d) includes the desirability of maintaining the existing environment within its scope." *Brown v Brown*, 332 Mich App 1, 20; 955 NW2d 515 (2020).

According to defendant, the trial court improperly focused its analysis of Factor (d) on "speculative opinions about what might potentially happen in the future, rather than the consideration of LMS' past environments and the desire in maintaining those environments." Plaintiff counters that "[t]he trial court did not base its determination solely on the fact that [defendant] might move in the future, but instead properly considered the fact that [defendant] has already moved three times in LMS' short life."

In the court's analysis of Factor (d), it first focused on the desirability of plaintiff's household, then it rejected defendant's argument that plaintiff's parents helping plaintiff care for

---

[8] The court stated in its order that it had "considered all the factors" and only addressed the ones "relevant to school enrollment," but nothing in its order other than this cursory statement suggests that the trial court considered all of the best-interest factors. Regardless, if the court did consider all of the best-interest factors, it would still be required to do so again on remand.

LMS when she was in plaintiff's care was problematic, and it finally addressed defendant's home environment, stating:

> Mother, of her own volition, moved from Bay County when the parties separated, and has lived in three residences since that time. Mother's educational background has also allowed her to pursue a variety of employment opportunities, which could, as noted by the FOC investigator, propel her to additional moves in the future.

The court concluded that this factor favored plaintiff.

We agree with defendant that this analysis amounted to clear legal error. The trial court did not consider the environment in which LMS lived while with defendant, nor the length of time that LMS lived in that environment. See *Demski*, 309 Mich App at 448-449. Nor did the court consider "the desirability of maintaining the existing environment within its scope." *Brown*, 332 Mich App at 20. The court instead focused on the speculative possibility of the existing environment changing at an indeterminate point in the future.[9] This was not a proper consideration under Factor (d), and the trial court committed a clear legal error by treating it as one.

Defendant next contends that the trial court committed clear legal error in its analysis of Factor (e). Factor (e) considers the "permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). This factor looks not at the acceptability of the custodial home but at the permanence of the custodial unit. *Brown*, 332 Mich App at 21.

Defendant argues that the trial court committed clear legal error when analyzing Factor (e) because, in deciding that this factor favored plaintiff, the court "relied on [plaintiff's] extended family that does not reside with LMS." While the trial court mentioned plaintiff's extended family when discussing Factor (e), we agree with plaintiff that the trial court found that Factor (e) favored plaintiff based on the fact that defendant was in her third marriage in a short amount of time, which the court opined "lends question to the permanence of [defendant's] family unit and the potential impact on [LMS] should a disruption in the home environment occur." Defendant has thus not identified a legal error in the trial court's analysis of Factor (e).

We consider the remainder of defendant's arguments related to the trial court's findings for the best-interest factors to be factual disputes that the parties are free to relitigate on remand.[10]

---

[9] This is not to suggest that a trial court can never consider a party's past moves—or possibly even planned future moves—when addressing Factor (d). By way of example, if a party has frequently moved, and those moves created an unstable environment, that could be pertinent when considering Factor (d). A past move could also affect the length of time that a child lived in a certain environment, which Factor (d) addresses.

[10] For clarity, in light of our decision to vacate the trial court's order and thus its previous findings, the court is not bound by those findings on remand. Indeed, those findings may be drastically different given that the trial court must consider up-to-date information. *Griffin*, 323 Mich App at 124-125 n 10.

## V. CONCLUSION

The trial court's order is vacated and this matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Colleen A. O'Brien
/s/ Michael J. Kelly